UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NICHOLAS PINTO,

                                    Plaintiff,                    **COMPLAINT**

            -against-                                             Case No.: 1:26-cv-1296 (AMN/DJS)


STEVEN JAMES, in his official capacity as New York
State Police Superintendent, KEVIN CATALINA, in
his official capacity as Suffolk County Pistol
Licensing Officer, SUFFOLK COUNTY, New York,

                                    Defendants.
------------------------------------------------------------------x

        Plaintiff, NICHOLAS PINTO, by his attorneys The Bellantoni Law Firm, PLLC, for his

Complaint respectfully states:

### NATURE OF THE ACTION

        1.      This is an action for declaratory, injunctive, and other relief, costs, disbursements,

nominal damages, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for

continuing irreparable harm to Plaintiff arising from violations of his constitutional rights as

codified in, and protected by, the Second Amendment to the United States Constitution, as applied

to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

        2.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C. §

1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes,

ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or

immunities secured by the United States Constitution. This action also seeks relief pursuant to 28

1

U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

### THE PARTIES

3.    Nicholas Pinto (hereinafter "Plaintiff") is a natural person and a resident of Suffolk County, State of New York. Plaintiff's residence falls within the jurisdiction of the Suffolk County Police Department for purposes of obtaining a New York State Pistol License.

4.    Plaintiff was, at all times relevant herein, an applicant for a New York State pistol license.

5.    Defendant Steven James ("Defendant" or "NYSP Superintendent") sued herein in his official capacity only, is the Superintendent of the New York State Police.

6.    As the NYSP Superintendent, Defendant is charged with publishing the statewide approved and required application for those seeking to apply for a license issued under Penal Law §400.00, *et seq.*

7.    The NYSP Superintendent published the latest revision of the PPB-3 in December 2024.[1]

8.    Defendant Kevin Catalina (the "licensing officer" or "Catalina") sued herein in his official capacity was, at all times relevant to this proceeding, the pistol licensing officer for Suffolk County pursuant to Penal Law § 265.00(10) and, in that connection, authorized to issue licenses pursuant to Penal Law § 400.00, *et seq.*

9.    Defendant SUFFOLK COUNTY, New York (the "County") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

---

[1] https://troopers.ny.gov/system/files/documents/2025/01/ppb-3-12-24.pdf

## CONSTITUTIONAL FRAMEWORK

10.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

11.     The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[2]

12.     The 'inherent right of self-defense' is central to the Second Amendment right.[3] "Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *Heller*, 554 U.S. at 599 (emphasis supplied).

13.     The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, 554 U.S. at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

---

[2] *Heller*, 554 U.S. at 592 (emphasis supplied).
[3] *Heller*, 554 U.S. at 628.

14.    The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

15.    The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *Bruen*, 597 U.S. at 17, see also at 28 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

16.    Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment.  *Heller,* 554 U.S. at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

17.    In *Bruen*, the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[4], and *Caetano*.[5]

18.    Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

"We reiterate that the standard for applying the Second Amendment is as follows:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.

---

[4] *McDonald v. Chicago*, 561 U.S. 742 (2010).

[5] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19; *Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016).

> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, 597 U.S. at 17. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

19.    "But to the extent that later history contradicts what the text says, the text controls." *Bruen*, 597 U.S. at 36.

### NEW YORK STATE LICENSING REGULATIONS

20.    Generally, the possession of handguns in New York State is a crime.

21.    To lawfully possess, purchase, and carry a handgun in New York, an individual must apply for and obtain a license.

22.    Applications for, and the issuance of, handgun licenses are governed by the provisions of Penal Law § 400.00, *et seq.*

### *Every Applicant For A New York State Pistol License Is Fingerprinted*

23.    Every applicant for a New York state pistol license is fingerprinted as part of the application process. Penal law § 400.00(4).

24.    Under Penal Law § 400.00(4) entitled, "Investigation," "[b]efore a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made…" including obtaining records from the "department of mental hygiene concerning previous or present mental illness."

25.    The "investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified," a fingerprint-based background check through the FBI and New York State Division of Criminal Justice shall be conducted, "written notification of the results of the search shall be forwarded to the

investigating officer… [and u]pon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay." Penal Law § 400.00(4).

26.      All criminal convictions and orders of protection concerning the applicant are made available to the licensing officer before any determination of the firearms license application is made.

27.      Before any pistol license is issued (or denied), the licensing officer knows whether the applicant has been convicted of a firearms-disqualifying offense and/or is prohibited from possessing firearms.

### The § 296 Disclosure Requirement on the PPB-3 Application Violates the Second Amendment

28.      New York Executive Law § 296(16) prevents "any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, [from making] any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual that were, *inter alia*, terminated in favor of the accused (C.P.L. 160.50); adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10); and non-criminal violations sealed by the court (C.P.L. 160.55)."

29.      Section 296(16) provides that an "individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur."

30.      However, the protections of § 296(16) "shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons."

31.     Before applying for a pistol license, every applicant for a pistol license must complete the statewide PPB-3 application form entitled, "Pistol/Revolver License Application" [Ex. 1].

32.     The NYSP Superintendent creates and publishes the PPB-3.

33.     Even The PPB-3 requires applicants to answer the following question: "Have you ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI (except traffic infractions)? __Yes ___No   If yes, furnish the following information: Arrest Date, Police Agency, Charge, Disposition Date, Disposition Court, Disposition…Sealed arrests must be included. *Refer to Executive Law §296(16)" [Ex. 1 at 3].

34.     Section 296(16)  does not obligate the Superintendent to require the disclosure of § 296 information on the PPB-3 application.

35.     There is no state statute or other legal obligation upon the Superintendent to impose a § 296 disclosure requirement upon applicants.

36.     Even prior to the current PPB-3 (rev. 12/24) § 296 information was required to be disclosed by all applicants completing the PPB-3, including Plaintiff.

37.     No application for a license issued under § 400 will be processed or considered unless the applicant completes the PPB-3 in its entirety.

38.     None of the events identified under § 296(16) are statutory disqualifiers to the possession, purchase, and/or carriage of firearms under 18 U.S.C. § 922(g).

39.     None of the events identified under § 296(16) are statutory disqualifiers to the issuance of a pistol license under Penal Law § 400.

40.    None of the events identified under § 296(16) constitutes a disqualifier to the possession, purchase, and/or carriage of a rifle or shotgun under New York State law  [see, Penal Law § 265.01(4)].

41.    The mandated disclosure of § 296 events - charges that were terminated in favor of the accused, adjourned in contemplation of dismissal, and/or non-criminal violations sealed by a court  - as a condition precedent to exercising the right to possess, purchase and/or carry handguns violates the Second Amendment and has no roots in this Nation's historical tradition of firearm regulation.

42.    Compelling individuals to disclose sealed arrests, dismissed charges, and non-criminal offenses to simply exercise the enumerated right to possess, purchase, and carry handguns has no National historical analogue.

43.    Allowing the government to bar an individual's right to possess, purchase, and carry handguns based on arrests and non-criminal offenses has no National historical analogue.

44.    Allowing the government to bar an individual's right to possess, purchase, and carry handguns based on non-criminal offenses has no National historical analogue.

45.    Disarming the People based on sealed arrests, dismissed charges, and non-criminal offenses violates the Second Amendment, as there is no national tradition of disarming people who have not been convicted of a crime and/or have not been adjudicated by a court as being 'dangerous.'

46.    The Superintendent should be enjoined from requiring the disclosure of § 296(16) events on the statewide PPB-3 application.

47.    The licensing officer should be enjoined from considering § 296(16) events and information when determining license applications issued under Penal Law § 400.

***New York Exec. Law § 296(16) Violates the Second Amendment, Facially and As-Applied***

48.    While New York State law protects convicted criminals from being discriminated against for employment-related purposes[6] subsection (16) of § 296.00 requires individuals to disclose dismissed charges, sealed arrests, and non-criminal violations on their license application before they may exercise the rights protected by the Second Amendment.

49.    The disclosure requirement of § 296.00(16) is integrated into the statewide license application published by the NYSP Superintendent, the PPB-3.

50.    Section 296(16) authorizes licensing officers to consider dismissed charges, sealed arrests, and non-criminal violations to deny non-prohibited individuals from engaging in conduct protected by the Second Amendment, including possessing, purchasing, and carrying firearms.

51.    And if such dismissed charges, sealed arrests, and non-criminal violations are not disclosed on the PPB-3, the licensing officer is required to deny the application [see, § 400.00(1) preamble].

52.    In an employment scenario, an "individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur." Executive Law § 296(15).

53.    But individuals seeking to protect themselves by exercising rights presumptively protected by the Second Amendment, like Plaintiff, are barred from responding "as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur."

54.    An individual whose charges were terminated in favor of the accused (C.P.L. 160.50), adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or

---

[6] N.Y. Exec. Law § 296(15) forbids potential employers from inquiring into the above events and protects applicants for employment from having to disclose the above information  even though employment is merely a 'privilege,' and not a Right protected by the U.S. Constitution..

215.10), and non-criminal violations sealed by the court (C.P.L. 160.55) has, *de facto*, *not* been adjudicated as a "dangerous" person.

55.     By allowing the licensing officers, like Catalina, access to and consideration of (i) charges that were terminated in favor of the accused (C.P.L. 160.50), adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10), and/or non-criminal violations sealed by the court (C.P.L. 160.55); and/or (ii) unproven allegations, to deny an individual of the right to possess, purchase, and/or carry firearms for self-defense, N.Y. Executive Law § 296.00(16) violates the Second Amendment.

56.     A finding that the above-referenced sections of § 296(16) violates the Second Amendment and permanently enjoining the Superintendent, his agents, and all others who receive actual notice of such an order, from requiring the disclosure of the § 296(16) factors and removing the disclosure requirement from the PPB-3 application would prevent an applicant's non-disclosure from constituting a basis to deny the application under preamble to § 400.00(1) and will provide Plaintiff with redress from constitutional harms.

57.     A finding that the above-referenced sections of § 296(16) violates the Second Amendment and permanently enjoining the Suffolk County Police Commissioner, his agents, and all others who receive actual notice of such an order from considering the § 296(16) information, to wit, dismissed charges, sealed arrests, and non-criminal violations to deny non-prohibited individuals from engaging in conduct protected by the Second Amendment, including possessing, purchasing, and carrying firearms will provide Plaintiff with redress from constitutional harms.

*The Preamble to Penal Law § 400.00(1) Violates the Second Amendment*

58.   The preamble to Penal Law § 400.00(1) provides, "1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true."

59.   Notwithstanding that every applicant's fingerprint-based criminal history is produced to every licensing officer, any individual who fails to disclose § 296 events on their PPB-3 application shall be denied a license according to the preamble to § 400.00(1).

60.   All pistol licensing officers are required to deny an application if the applicant fails to identify all § 296 events on the PPB-3 application.

61.   The preamble to § 400.00(1) violates the Second Amendment as applied to the subgroup of individuals who fail to disclose on their PPB-3 application charges that were terminated in favor of the accused, adjourned in contemplation of dismissal, and/or non-criminal violations sealed by the court.

62.   The preamble to § 400.00(1) violates the Second Amendment as applied to Plaintiff's particular circumstances, as detailed herein.

63.   The preamble to Penal Law § 400.00(1) is facially unconstitutional and overbroad because it does not allow licensing officers the discretion to approve an application where non-disclosure of § 296 events on the PPB-3 (or simply *initial* non-disclosure as in Plaintiff's case) was unintentional, mistaken, and the like.

64.   The preamble to § 400.00(1) is facially unconstitutional because it does not contain any requirement that the omission of § 296 information must be 'knowing' 'deliberate' or 'intentional.'

11

65.     There is no historical analogue for foreclosing the right to possess, purchase and/or carry handguns for self-protection based on an individual's failure to disclose the type of events identified under § 296(16).

66.     Compelling individuals to disclose sealed arrests, dismissed charges, and non-criminal offenses to simply exercise the enumerated right to possess, purchase, and carry handguns has no National historical analogue.

67.     Barring an individual's right to possess, purchase, and carry handguns based on arrests and charges that were adjudicated, dismissed, and sealed has no National historical analogue.

68.     Barring an individual's right to possess, purchase, and carry handguns based on non-criminal offenses has no National historical analogue.

69.     Disarming individuals based on sealed arrests, dismissed charges, and non-criminal offenses violates the Second Amendment, as there is no national tradition of disarming people who have not been convicted of any crime and/or have not been adjudicated by a court as being 'dangerous.'

70.     Catalina, hos agents, employees, and those acting in concert with him should be permanently enjoined from enforcing the preamble to Penal Law § 400.00(1) as applied to (i) the subcategory of individuals who do not disclose the § 296 information, (ii) Plaintiff's particular circumstances as set forth herein, and (iii) as applied to unintentional, unknowing, and/or mistaken non-disclosure of § 296 events.

71.     If the § 400.00(1) preamble was enjoined as applied to (i) the subcategory of individuals who do not disclose the § 296 information, (ii) Plaintiff's particular circumstances as set forth herein, and (iii) as applied to unintentional, unknowing, and/or mistaken non-disclosure

of § 296 events, Plaintiff's pistol license application would not have been denied thereunder because all other statements on his PPB-3 application were true.

### The Suffolk County Pistol Licensing Bureau Applicant Questionnaire Violates the Second Amendment, Facially and As-Applied

72.    The Suffolk County Pistol Licensing Bureau ("PLB") Applicant Questionnaire (the "Questionnaire") requires applicants to disclose whether they "have ever been arrested, summoned, charged, or indicted *anywhere* for *any* offense, including DWI (except traffic infractions)" (emphasis supplied) (the "Arrest History Question(s)").

73.    For the same reasons detailing the unconstitutionality of § 296(16) above, the Arrest History Question(s) violate the Second Amendment facially and as-applied to Plaintiff.

74.    A finding that the Arrest History Question(s) violate the Second Amendment and permanently enjoining Catalina, his agents, and all others who receive actual notice of such an order, from requiring the challenged disclosure and removing the disclosure requirement from the Questionnaire would prevent an applicant's non-disclosure from constituting a basis to deny such applicants under preamble to § 400.00(1) and will provide Plaintiff with redress from constitutional harms.

75.    A finding that the above-referenced sections of § 296(16) violates the Second Amendment and permanently enjoining the Suffolk County Police Commissioner, his agents, and all others who receive actual notice of such an order from considering the § 296(16) information, to wit, dismissed charges, sealed arrests, and non-criminal violations to deny non-prohibited individuals from engaging in conduct protected by the Second Amendment, including possessing, purchasing, and carrying firearms will provide Plaintiff with redress from constitutional harms.

13

**MATERIAL FACTS**

76.     Plaintiff is a resident of Suffolk County, New York and part of 'the People' for whom the Second Amendment was codified.

77.     Plaintiff has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law.

78.     Plaintiff owns shotguns and rifles, which he purchased from a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

79.     Plaintiff applied for a New York State pistol license for self-defense and to engage in target pistol shooting.

80.     When completing the New York State PPB-3 application, Plaintiff forgot to include an arrest from **2014** that resulted in a **non-criminal offense** and sealed by the criminal court.

81.     When completing the PLB Questionnaire, Plaintiff forgot to include an arrest from **2014** that resulted in a **non-criminal offense** and sealed by the criminal court.

82.     Plaintiff's non-disclosure was unintentional.

83.     By Notice of Disapproval by the PLB dated August 1, 2025, Plaintiff's application was denied.

84.     Plaintiff's application was denied based on his non-disclosure of the 2014 arrest and resulting non-criminal conviction.[7]

85.     Plaintiff's non-criminal conviction occurred over 10 years ago.

86.     Plaintiff had no reason or motivation to withhold the non-criminal conviction, as it does not present a legal barrier to his possession of firearms or the issuance of a pistol license.

---

[7] The PLB also denied Plaintiff based on an alleged federal disqualifier; however, the issue was rendered moot by the time Plaintiff filed his internal appeal with the PLB.

14

87. Plaintiff's non-disclosure is immaterial to his fitness to possess firearms.

88. Plaintiff's non-criminal conviction is not probative of his fitness to possess firearms.

89. Plaintiff's non-criminal conviction is not an adjudication of "dangerousness."

90. Plaintiff has never been adjudicated to pose a "danger" to another person.

91. Plaintiff filed an internal appeal with the PLB of his disapproval on October 15, 2025.

92. By written notification dated February 16, 2026, the Suffolk County Police Department Legal Bureau upheld the disapproval of Plaintiff's pistol license.

93. The basis for upholding the denial was Plaintiff's failure to disclose the 2014 arrest.

94. The appeal denial informed, "Notwithstanding any good faith error regarding your arrests, summonses, and charges, your failure to disclose gave the Licensing Officer sufficient grounds upon which to disapprove your application."

95. The PLB maintained the denial of Plaintiff's application because he did not disclose his 2014 arrest and non-criminal conviction—even though the arrest and conviction were plainly identified on Plaintiff's fingerprint-based criminal history report, which was provided to the licensing officer as part of the application process.

96. As a result of the challenges statutes, regulations, and the defendants' enforcement thereof, Plaintiff has been caused to suffer the violation of his Second Amendment rights.

**AS AND FOR A FIRST CAUSE OF ACTION**
**U.S. Const., Amend II, XIV**

97.    Repeats and realleges paragraphs "1" through and including "96."

98.    Under the theory that the challenged provisions of New York State Executive Law

§ 296.00(16) violate the Second Amendment, facially and as applied.  42 U.S.C. § 1983.

**AS AND FOR A SECOND CAUSE OF ACTION**
**U.S. Const., Amend II, XIV**

99.    Repeats and realleges paragraphs "1" through and including "98."

100.    Under the theory that the New York State Police Superintendent's § 296 disclosure

requirement on the PPB-3 application violates the Second Amendment, facially and as applied.  42

U.S.C. § 1983.

**AS AND FOR A THIRD CAUSE OF ACTION**
**U.S. Const., Amend II, XIV**

101.    Repeats and realleges paragraphs "1" through and including "100."

102.    Under the theory that the preamble to Penal Law § 400.00(1) violates the Second

Amendment, facially and as applied. 42 U.S.C. § 1983.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**U.S. Const., Amend II, XIV**

103.    Repeats and realleges paragraphs "1" through and including "102."

104.    Under the theory that the challenged provisions of the Suffolk County Pistol

Licensing Bureau Applicant Questionnaire complained of herein violate the Second Amendment,

facially and as applied. 42 U.S.C. § 1983.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**U.S. Const., Amend II, XIV**

105.    Repeats and realleges paragraphs "1" through and including "104."

106.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policies described herein, to wit, the challenged provisions of the Pistol Licensing Bureau Applicant Questionnaire, the County of Suffolk, New York is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) for the violation of his constitutional rights as pled herein. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a Judgment and Order:

- Declaring that the challenged provisions of New York State Executive Law § 296.00(16) violate the Second Amendment, facially and as applied to Plaintiff;

- Declaring that the New York State Police Superintendent's § 296 disclosure requirement on the statewide PPB-3 application violates the Second Amendment, facially and as applied to Plaintiff;

- Declaring that the Suffolk County Pistol Licensing Bureau Applicant Questionnaire requirement that applicants must disclose all  arrests, summonses, charges… *anywhere* for *any* offense including DWI (except traffic infractions)" (emphasis supplied) violates the Second Amendment facially and as applied to Plaintiff;

- Declaring that the preamble to Penal Law § 400.00(1) violates the Second Amendment (i) as applied to nondisclosure of sealed arrests, dismissed charges, and non-criminal violations; (ii) as applied to Plaintiff's particular circumstances; and (iii) because it omits the requirement that such omission must be 'knowing' 'deliberate' or 'intentional';

17

- Declaring that Suffolk County, New York is liable for violating Plaintiff's Second Amendment rights by virtue of the challenged Pistol Licensing Bureau Applicant Questionnaire requirement challenged herein under *Monell*;

- Permanently enjoining the New York State Police Superintendent, his agents, employees, attorneys, those acting in concert with him and those receiving actual notice of such order from requiring disclosure of § 296 events, to wit, sealed arrests, dismissed charges, and non-criminal violations, on the statewide PPB-3 pistol license application;

- Permanently enjoining the Suffolk County Police Commissioner, his agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing the requirement that applicants for a license issued under Penal Law § 400.00 disclose "all arrests, summonses, charges, including DWI";

- Permanently enjoining the Suffolk County Police Commissioner, his agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing the preamble to Penal Law § 400.00(1) to deny a license application (i) as applied to nondisclosure of sealed arrests, dismissed charges, and non-criminal convictions, (ii) as applied to Plaintiff, and (iii) as applied to unintentional, mistaken, and/or unknowing disclosure;

- Permanently enjoining the Suffolk County Police Commissioner, his agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing Executive Law § 296.00(16), to wit, sealed arrests, dismissed charges, and non-criminal violations, to deny individuals applying for a license pursuant to Penal Law §400.00;

18

- Awarding compensatory damages in at least a nominal amount against Suffolk County, New York;

- Declaring that Plaintiff is a prevailing party under 42 U.S.C. § 1988;

- Awarding reasonable statutory attorney's fees to Plaintiff pursuant to 42 U.S.C. § 1988;

- Awarding costs and disbursements to Plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: June 25, 2026
  Scarsdale, New York

        THE BELLANTONI LAW FIRM, PLLC
        *Attorneys for Plaintiff*

By:  *Amy L. Bellantoni*
   Amy L. Bellantoni, Esq.
   2 Overhill Road, Suite 400
   Scarsdale, New York 10583
   abell@bellantoni-law.com

19